[No. 40657. Department One. April 2, 1970.]

CLARENCE P. PATE et al., *Appellants,* v. THE TYEE MOTOR INN, INC., *et al., Respondents.*\*

*M. K. Westgard* and *J. L. Coniff,* for appellants.

*Parr, Baker, Alexander & Cordes* and *Frank E. Baker,* for respondents.

WEAVER, J.—This is an action for damages for alleged slander. It was commenced by eight women (joined by their husbands, if married) employed as chambermaids, against their employer, Tyee Motor Inn, a corporation, and against Esther Skiff and LaVera Hart, the head and assistant head housekeepers of the defendant inn.

We do not reach the merits of the case. The trial court granted defendants' motion for summary judgment and dis-

\*Reported in 467 P.2d 301.

missed the action with prejudice. The question before us is whether there are genuine issues of material fact that should be decided by trial on the merits.

Defendant corporation operates a large motor hotel. Its maid supervisor, defendant Mrs. Esther Skiff, called a meeting of the maids working under her direction. The meeting was occasioned by the purported unionization of the maid service staff. It was attended by 19 of defendant corporation's employees, including all but one of the plaintiffs. By the time of the meeting, plaintiffs had become union members.

It is charged that Mrs. Skiff, in addressing the meeting, stated:

> This sneaking around behind my back and Mr. James Swanson in joining the union—there is a word for it. I know the word for it is Communism and in my own little group; . . .

Plaintiffs claim this statement was directed at them, that it was untrue, slanderous, and that they suffered damages from it.

In granting defendants' motion for summary judgment the trial court held that Mrs. Skiff's remark was protected by qualified privilege and that the disposition of the case was governed by the rationale of *Prins v. Holland-North America Mortgage Co.,* 107 Wash. 206, 181 P. 680, 5 A.L.R. 451 (1919).

In *Prins* the alleged libelous statement was a letter from the head office of the corporation to the sole manager of a branch office criticizing the local manager's conduct of company business. The court held that there was no *publication* of the alleged libel for the letter was a communication between officers of the company whose duty it was to conduct the ordinary business of the corporation. The receipt of the letter by the corporate officer was as much the act of the corporation as was the writing of the letter. The opinion does not discuss the question of qualified privilege.

■ A privileged communication involves the occasion where an otherwise slanderous statement is shared with a third person who has a common interest in the subject and

is reasonably entitled to know the information. *Ward v. Painters' Local 300*, 41 Wn.2d 859, 866, 252 P.2d 253 (1953).

■ Tort liability for slander requires that the defamation be communicated to someone other than the person or persons defamed. There must be a publication of the defamation. *See*, W. Prosser, Torts § 108, at 786 (3d ed. 1964).

In the ordinary course of her work Mrs. Skiff had no duty to comment upon the ideology of unions. Her statement is patently outside the circumstances and principles of the *Prins* case.

The affidavits accompanying the motion for summary judgment raise an issue of fact as to whether the allegedly slanderous statement was directed only at those who had joined the union or was made to the entire group. Plaintiffs' affidavit asserts:

> the statement was made at a meeting called by Esther Skiff to approximately 19 employees of the Tyee Motor Inn, Inc., most of whom did not belong to the union and that those who did belong to the union were well known to the other employees and to Esther Skiff . . .

Defendants' affidavit disagrees:

> . . . Esther Skiff had no knowledge as to who had joined the union and who had not. The alleged statement made by Esther Skiff was not made to any one person. She was talking to all the girls present . . .

If the maids were addressed as a group, then there was no third person to whom the slander was published. *See Lunz v. Neuman*, 48 Wn.2d 26, 290 P.2d 697 (1955). On the other hand, publication occurred if the statement referred to the union members alone and was made in the presence of the nonunion members.

The question can only be resolved by the trier of fact. It should not have been determined upon motion for summary judgment.

The judgment of dismissal is reversed and the cause remanded for further proceedings.

HUNTER, C. J., HAMILTON, J., and LEAHY, J. Pro Tem., concur.

NEILL, J. (concurring)—I concur that summary judgment should not have been granted, but disagree with the court's continuation of the rationale used in *Prins v. Holland-North America Mortgage Co.,* 107 Wash. 206 181 P. 680, 5 A.L.R. 451 (1919).

Clarity and effective analysis require that the term "publication" in slander and libel suits be restricted to the physical concept of publication in fact. *See,* W. Prosser, Torts § 108, at 786 (3d ed. 1964). Thus understood, the requisite element of publication in defamation actions consists of the communication of the defamatory matter to a person other than the one defamed. Restatement of Torts § 577 (1938).

In *Prins, supra,* there was a communication of defamatory statements between corporate officials which was also read by other corporate employees. This court properly held for the defendant under the circumstances but, in doing so, issues of qualified privilege and publication were, unfortunately, intermingled. There can hardly be a doubt that under the facts of *Prins* there was a publication. The letter or memorandum defamatory of the plaintiff was actually read by at least two other employees of the defendant company. Thus, the holding in *Prins* was properly on the basis of qualified privilege.

In the present case, there does not appear to be any dispute of fact that the purportedly defamatory words were spoken to the assembled housekeepers, some of whom were union members and some of whom were not. It follows that there was a publication of the allegedly defamatory words to nonunion housekeepers concerning housekeepers who were union members.

There remains, however, the matter of the possible defense of qualified privilege. I disagree with the statement of the majority that "Mrs. Skiff had no duty to comment upon the ideology of unions." Such a statement goes to the very heart of the issue of qualified privilege. The purpose of the meeting, the content of the remarks by Mrs. Skiff, and the relationship between those remarks and her responsibilities

and duties, are all very much in issue, are unresolved by the present record and involve questions of fact. *See, Ward v. Painters' Local 300,* 41 Wn.2d 859, 252 P.2d 253 (1953).

Accordingly, I would reverse and remand for further proceedings.