45 P.3d 580 (2002)
111 Wash.App. 377
RICHLAND SCHOOL DISTRICT, Appellant,
v.
MABTON SCHOOL DISTRICT, Respondent.
No. 20250-0-III.
Court of Appeals of Washington, Division 3, Panel Three.
April 25, 2002.
*583 Rockney L. Jackson, Kirk A. Ehlis, Beyer, Elofson & Ehlis, for Appellant.
Jeanie R. Tolcacher, Yakima, for Respondent. *581
*582 SCHULTHEIS, J.
Richland School District hired Jesus ("Jesse") Caballero as a night custodian. Afterward, it discovered that Mr. Caballero had resigned from Mabton School District in exchange for Yakima County's dismissal of three counts of child molestation. Three Mabton officials had written letters of recommendation for Mr. Caballero without mentioning the charges of child molestation or various reprimands he had received for inappropriate comments made to students. Richland terminated Mr. Caballero, paid him approximately $100,000 in front and back wages, and then sued Mabton for negligence based on misrepresentation and nondisclosure. On cross motions for summary judgment, the trial court found that Mabton breached no duty owed to Richland, and granted Mabton's motion for summary judgment.
On appeal, Richland contends Mabton owed a duty to make accurate recommendations for its former employee, especially when those recommendations were for potential employment around children. We find that Mabton breached no duty to disclose Mr. Caballero's arrest for child molestation or history of reprimands, and affirm.

FACTS
Mr. Caballero was employed as a janitor with Mabton for over 10 years, from March 1984 to October 1994. During the last two years of employment, he was warned of improper behavior on four occasions. Regarding the first of these episodes, an employee evaluation in June 1993 noted that Mr. Caballero needed "to stay on task" and to improve in such areas as "convers[ing] with students in a proper manner." Clerk's Papers (CP) at 242. Second, a letter of reprimand issued by principal Keith Morris and maintenance supervisor Bill Roettger in January 1994 warned him not to tease or joke with the high school students. According to the reprimand, Mr. Caballero had remarked to a group of students, "`You guys better watch out for this kid because he has *584 AIDS.'" CP at 243. Later that month, Mr. Caballero received another letter of reprimand. This document, prepared by Mr. Morris, Mr. Roettger, and Superintendent Dale Knott, informed Mr. Caballero that students complained he called them "moho" or "wetback." CP at 244. The officials warned him that if he teased or joked with students again he would be suspended for five days without pay, and further incidents would lead to his termination.
In May 1994 Mr. Caballero was arrested and charged with two counts of third degree child molestation and one count of second degree child molestation. His attorney sent a copy of the court file to Superintendent Knott. Mabton took no action, but issued him a five-day suspension in August 1994 for asking a male student if he and another student were going to "do some Ajax." CP at 253. Several school officials met with Mr. Caballero after the suspension and developed an "action plan" that arranged his schedule to decrease contact with students. CP at 254.
On October 6, 1994, the State agreed to dismiss with prejudice the criminal charges in exchange for Mr. Caballero's agreement to resign his position with Mabton. Mr. Caballero resigned the next day, effective October 10. Mabton rehired him, however, as a substitute bus driver.
Later in October, Superintendent Knott wrote Mr. Caballero a letter of recommendation addressed "TO WHOM IT MAY CONCERN." CP at 261. The letter noted Mr. Caballero's experience in maintenance and bus driving and concluded with the following:
Jesse's custodial work was performed to a very high level of expertise. As to the calibre of efficiency in this area, I would rank him in the top 5% of all custodians that I have observed in my 33 years in education.
It is with pleasure that I recommend Jesse Caballero to you as an efficient and thorough employee.
CP at 261. The letter did not mention the reprimands or the criminal charges.
Mabton Assistant Superintendent Howard Carlson wrote a letter of recommendation in July 1995 addressed to Richland Assistant Superintendent Tom Hedges. This close copy of Superintendent Knott's letter also recommended Mr. Caballero without reservation. A third letter of recommendation, written by Mr. Roettger in August 1995, stated that "Jesse's custodial work was performed to a very high level of expertise and his attendance was excellent." CP at 263. As with the other two letters, this recommendation did not mention any reprimands or criminal charges.
In October 1995 Mr. Caballero was hired as a full-time janitor for Richland. The record shows no problems with his employment until he was terminated in October 1997 for making false statements in his employment application and for asking a studenthis nephewwhere the student lived. Mr. Caballero filed a grievance with his union and the issue was presented to an arbitrator in a five-day hearing involving 53 exhibits and 1,095 pages of transcript.
The arbitrator's 74-page decision thoroughly examines the facts leading up to Mr. Caballero's criminal charges and the complaint by the nephew. According to the record before the arbitrator, the allegations of molestation (involving members of his wife's family) changed during the course of the investigation, were disputed among family members, appeared to be tied to divorce proceedings, and were treated by Mabton officials as a "family squabble." CP at 187. Because Mabton regarded Mr. Caballero as innocent of the charges, it hired him as a substitute bus driver after he resigned.
The arbitrator further noted that Mr. Caballero completed his probation with Richland successfully. On two occasions after he was hired by Richland, he filed grievances when junior employees were promoted over him. After his union threatened to sue, Richland conceded and promoted Mr. Caballero to grounds person in August 1997. During the promotion dispute, a union representative mentioned to the Richland personnel director that "he was surprised that the District kept a child molester on the staff." CP at 147. The personnel director ordered an investigation of the molestation charges, *585 which initially unearthed nothing worth pursuing.
In September 1997, however, while he was mowing the school grounds, Mr. Caballero saw his nephew, who formerly attended a different school. Mr. Caballero asked the boy where he was living. This nephew was involved in a custody dispute with his mother's familyMr. Caballero's in-lawsand was afraid for them to find out where he and his father were living. The nephew's father informed the school that his son was inappropriately questioned and then claimed that Mr. Caballero had molested other children. Richland obtained Mabton's personnel file on Mr. Caballero, including the court record. Deciding that Mr. Caballero had misrepresented his reasons for leaving Mabton, Richland terminated him in October 1997.
The arbitrator, after noting the tension between the public policy of presumed innocence and the need to protect children from abuse, ordered Mr. Caballero reinstated with back pay and benefits. Rather than comply, however, Richland settled with Mr. Caballero, paying him approximately $100,000 in front and back pay in exchange for his resignation.
Richland sued Mabton in September 2000 for damages due to negligent misrepresentation of Mr. Caballero's employment record. In effect, Richland sought contribution for the payments made to Mr. Caballero as well as for the costs and attorney fees associated with the arbitration. Both parties moved for summary judgment. Finding no evidence that Richland had relied on the recommendations when hiring Mr. Caballero, or that the information in the letters of recommendation was false, the trial court granted Mabton's motion for dismissal of the negligent misrepresentation claim. Further, the trial court found that Mabton had no affirmative duty to disclose negative information about Mr. Caballero, especially when Richland was prohibited by former WAC 162-16-050(3) (1975) from making preemployment inquiries about arrests. On this basis, the trial court granted summary judgment to Mabton dismissing the negligence claim as well. Richland now appeals.

DUTY TO DISCLOSE ALLEGATIONS OF MISCONDUCT IN EMPLOYMENT RECOMMENDATIONS
Richland contends Mabton violated a duty to disclose in the letters of recommendation Mr. Caballero's sexual molestation charges and discipline problems. According to Richland, this duty is recognized under the theory of negligent misrepresentation or on basic negligence principles. Because Washington courts have never addressed a former employer's liability for failing to disclose certain information in an employment referral or recommendation, this is a case of first impression. Our review of the summary judgment is de novo, considering all evidence in the light most favorable to Richland. Folsom v. Burger King, 135 Wash.2d 658, 663, 958 P.2d 301 (1998). Summary judgment is appropriate only if there are no genuine issues of material fact and if Mabton is entitled to judgment as a matter of law. CR 56(c). Whether a particular defendant owes a duty of care to a particular plaintiff is a question of law. Schaaf v. Highfield, 127 Wash.2d 17, 21-22, 896 P.2d 665 (1995).
I. Negligent Misrepresentation.
Washington has adopted the Restatement (Second) of Torts sections 551 and 552 (1977) as the standards for claims of negligent misrepresentation. Havens v. C & D Plastics, Inc., 124 Wash.2d 158,180, 876 P.2d 435 (1994); Colonial Imports, Inc. v. Carlton N.W., Inc., 121 Wash.2d 726, 731, 853 P.2d 913 (1993). In order to sustain a claim under these sections, the plaintiff must establish, in part, a duty to disclose or to provide accurate information. Liability for failure to disclose is set out in Section 551:
(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.
(2) One party to a business transaction is under a duty to exercise reasonable care to *586 disclose to the other before the transaction is consummated,
(a) matters known to him that the other is entitled to know because of a fiduciary or other similar relation of trust and confidence between them; and
(b) matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading[.]
RESTATEMENT (SECOND) OF TORTS § 551 (1977). Liability for false information negligently supplied is set out in Section 552:
(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
RESTATEMENT, TORTS § 552.
The trial court found that Mr. Caballero's letters of recommendation did not contain false information. Each letter extolled his virtues as a custodian, and Richland has provided no evidence to the contrary. Further, none of the Richland officials responsible for hiring Mr. Caballero testified as to their reliance on the letters of recommendation. Because Richland failed to raise an issue of fact on justifiable reliance or on its claim that Mabton negligently provided false information in the letters of recommendation, we confine our analysis to the application of the Section 551 duty to disclose.
Negligent misrepresentation under Section 551 invokes the duty to disclose only in terms of a business transaction. Colonial Imports, 121 Wash.2d at 732, 853 P.2d 913. Liability is further limited by Section 551(2) to those situations where business advice is given by one who proclaims expertise or who has a financial stake in the matter under consideration. Id. at 732-33, 853 P.2d 913. The duty to disclose arises in a quasi-fiduciary relationship, when (1) a special relationship of trust and confidence exists between the parties; (2) one party relies upon the superior specialized knowledge and experience of the other; (3) the seller has knowledge of a material fact unknown to the buyer; and (4) there exists a statutory duty to disclose. Id. at 732, 853 P.2d 913. A letter of recommendation from a former employer to potential employers does not constitute a business transaction involving a quasi-fiduciary relationship between a seller and buyers. Consequently, negligent misrepresentation in the context of Section 551 does not apply to these facts.
Richland urges this court to adopt another Restatement theory of negligent misrepresentation that supports liability for a misleading employment recommendation in Davis v. Board of County Commissioners of Dona Ana County, 127 N.M. 785, 987 P.2d 1172, 1179 (1999) and Randi W. v. Muroc Joint Unified School District, 14 Cal.4th 1066, 1081, 60 Cal.Rptr.2d 263, 929 P.2d 582 (1997). Restatement (Second) of Torts section 311 (1965), called "Negligent Misrepresentation Involving Risk of Physical Harm," imposes liability on anyone who gives false information to another who reasonably relies on that information, and physical harm results:
(1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results
(a) to the other, or
(b) to such third persons as the actor should expect to be put in peril by the action taken.
(2) Such negligence may consist of failure to exercise reasonable care
(a) in ascertaining the accuracy of the information, or
(b) in the manner in which it is communicated.
Both Davis and Randi W. applied Section 311 in the context of misleading employment recommendations, but only when those recommendations amounted to "an affirmative misrepresentation presenting a foreseeable and substantial risk of physical harm to a *587 third person." Randi W., 14 Cal.4th at 1070, 60 Cal.Rptr.2d 263, 929 P.2d 582 (emphasis omitted); see also Davis, 987 P.2d at 1179 (the rule applies to anyone who knows or should know that the safety of others may depend upon the accuracy of the information).
In Randi W., officials at several school districts gratuitously and unreservedly recommended a former employee who had been the subject of numerous complaints involving sexual misconduct with students. The employee moved from school district to school district as the complaints added up, each time recommended without reservation by the previous administration. On two occasions, the employee was forced to resign under pressure due to sexual misconduct charges. Randi W., 14 Cal.4th at 1072, 60 Cal.Rptr.2d 263, 929 P.2d 582. Yet the recommendations from these school districts stated he was recommended "`for almost any administrative position he wishes to pursue,'" and lauded his efforts to make "`a safe, orderly and clean environment for students and staff.'" Id. The California Supreme Court found that these letters of recommendation constituted affirmative representations that strongly implied the former employee was fit to interact safely with female students. Id. at 1084, 60 Cal.Rptr.2d 263, 929 P.2d 582. Because these representations were misleading in light of the school districts' knowledge that the former employee had been repeatedly charged with sexual improprieties, the court found that the injured student had established a prima facie case of negligent misrepresentation. Id.
In Davis, a New Mexico mental health technician, Joseph Herrera, sexually assaulted a woman under his care during psychiatric therapy. In a prior employment as a county detention sergeant, Mr. Herrera had been investigated for sexually harassing inmates under his authority. A report compiled by the sheriff's department concluded that while not all of the allegations against Mr. Herrera could be confirmed, his conduct was suspect. He resigned before the county could schedule a disciplinary hearing. Within days, the director of the detention center wrote a positive recommendation without reference to the reprimand, the allegations of sexual harassment, or the results of the investigation. Davis, 987 P.2d at 1175-76. The letter also lauded Mr. Herrera as an excellent employee who developed social programs for the inmates. Id. at 1176, 987 P.2d 1172. The woman who was assaulted at Mr. Herrera's new job sued the county for negligent misrepresentation pursuant to Section 311. Finding that the allegations of sexual harassment were "far more than mere gossip or innuendo," Davis, 987 P.2d at 1179, held that a reasonable person who had this information should have foreseen that omission of the report and disciplinary actions in the recommendation would pose a threat of physical harm to those like the plaintiff.
Washington has never adopted Restatement (Second) of Torts section 311 and no published case has discussed its applicability to Washington common law. On these facts, we decline to adopt Section 311 as a basis for negligent misrepresentation. Even if this court found a duty of care under Section 311 not to misrepresent the facts in describing a former employee, Richland cannot show that Mabton's alleged misrepresentations presented a substantial, foreseeable risk of physical injury or that any person suffered physical harm. Randi W., 14 Cal.4th at 1081, 60 Cal.Rptr.2d 263, 929 P.2d 582. None of the reprimands involved risks of physical harm, merely inappropriate, somewhat adolescent, comments to students. The charges of child molestation apparently were not confirmed by the police investigation and were dismissed, albeit with the proviso that Mr. Caballero agree to resign from the school district. Mabton officials, with some personal knowledge of the parties involved in the allegations, decided that the charges were baseless. A reasonable person would not foresee that a person with Mr. Caballero's record of questionable accusations and minor discipline problems posed a risk of physical harm to students.
II. Negligence.
To establish a claim of negligence, Richland must prove (1) the existence of a duty owed to Richland; (2) breach of *588 that duty; and (3) an injury proximately caused by the breach. Ruff v. County of King, 125 Wash.2d 697, 704, 887 P.2d 886 (1995). Duty is a question of law, while breach and proximate cause are generally questions of fact for the jury. Hertog v. City of Seattle, 138 Wash.2d 265,275, 979 P.2d 400 (1999). Richland's hurdle here is to establish that Mabton owed a duty to disclose Mr. Caballero's criminal charges and reprimands to potential school district employers.
Richland first argues that the "common interest privilege" creates an affirmative duty to give accurate recommendations. Appellant's Br. at 12. The common interest qualified privilege protects a declarant from liability for defamatory statements under certain circumstances. Moe v. Wise, 97 Wash.App. 950, 957, 989 P.2d 1148 (1999) (citing RESTATEMENT (SECOND) OF TORTS §§ 593-597 (1977)). When the declarant and the recipient have a common interest in the subject matter of the communication and the recipient is reasonably entitled to know the information, the declarant has no liability in tort if the communication is slanderous. Pate v. Tyee Motor Inn, Inc., 77 Wash.2d 819, 820-21, 467 P.2d 301 (1970). The privilege is commonly asserted in cases when employees, acting in the ordinary course of their work, publish defamatory statements to other employees. See Messerly v. Asamera Minerals, (U.S.) Inc., 55 Wash.App. 811, 817-18, 780 P.2d 1327 (1989). Assuming a common interest between Mabton and Richland (the safety of each district's school children, for instance), the qualified privilege would protect Mabton from liability to Mr. Caballero for any defamatory statements Mabton might make in Mr. Caballero's letter of recommendation. But the privilege does not create a duty to disclose potentially defamatory information to Richland. The privilege operates as a shield in cases involving slander, not as a sword as urged here. Consequently, Mabton's duty to disclose cannot be predicated on the common interest privilege.
Richland also contends the Washington Administrative Code regarding unprofessional conduct of certificated education employees imposes a duty to disclose Mr. Caballero's negative history. WAC 180-87-050 prohibits education practitioners (certificated employees, WAC 180-87-035) from falsifying, deliberately misrepresenting, or omitting a material fact in a statement of professional qualifications, in an application or recommendation for professional employment, or in an evaluation of personnel. WAC 180-878-050(1), (2), (5). Only certificated Mabton employeessuch as Superintendent Knott and Assistant Superintendent Carlsonare subject to this regulation. If the Mabton officials' recommendations of Mr. Caballero constituted unprofessional conduct under this regulation, then they would be held accountable pursuant to the provisions of chapter 180-86 WAC.[1] WAC 180-87-015.
Far from creating a duty recognized by tort law, these regulations relate solely to the purpose of the chapter, which is to "set forth policies and procedures related to reprimand, suspension, and revocation actions respecting certification of education practitioners in the state of Washington for acts of unprofessional conduct." WAC 180-87-005. The regulations do not create an independent duty to disclose material facts in an employment recommendation.
Finally, Richland cites statutory provisions that it contends represent the Legislature's intent that school districts deal openly with one another on issues of common interest, such as the protection of school children from harmful employees. RCW 28A.400.303 requires a school district to make a criminal record check of all employees who will have unsupervised access to children. RCW 28A.400.320 further provides that a school district must immediately terminate an employee who has contact with children if that employee pleads guilty to or is convicted of certain felony crimes involving children. Neither of these provisions creates a duty to inform potential employers that a former school district employee was charged with sexual molestation. In fact, these provisions *589 place the duty on Richland to make every effort to screen a potential employee such as Mr. Caballero for any criminal record.
Richland's argument that the public disclosure act, RCW 42.17.250-.348, creates a duty to disclose Mr. Caballero's criminal charges is also without merit. Under the public disclosure act, state and local agencies must disclose any public record upon request, unless the record falls within certain exemptions. Progressive Animal Welfare Soc'y v. Univ. of Wash., 125 Wash.2d 243, 250, 884 P.2d 592 (1994). Personnel records are exempt from public inspection if their disclosure would violate the employee's right to privacy. RCW 42.17.310(1)(b). Richland does not show that Mr. Caballero's personnel record falls outside this exemption. Most important, the public disclosure act provides a duty to disclose only if the information is specifically requested. If Richland had requested Mr. Caballero's personnel file, Mabton may have had a duty under the act to provide it. Mabton did not have the counterpart duty to offer the information when not requested. Additionally, former WAC 162-16-050(3) (1975) declares that preemployment inquiries as to arrests are unfair labor practices. Although this regulation was repealed effective August 12, 1999,[2] when Mr. Caballero was hired in 1995, Richland could not expect Mabton to provide information that Richland was prohibited from seeking.
In summary, Richland fails to establish as a matter of law that Mabton owed it a duty under common law negligence principles to include the dismissed charges of child molestation and the reprimands in Mr. Caballero's letters of recommendation. Richland also fails to establish a duty to disclose under Washington theories of negligent misrepresentation. Accordingly, the trial court did not err in granting summary judgment to Mabton. CR 56(c). As the prevailing party, Mabton is entitled to statutory attorney fees and costs on appeal. RAP 14.2, 14.3, 18.1.
Affirmed.
WE CONCUR: BROWN, C.J., and SWEENEY, J.
NOTES
[1] See, e.g., WAC 180-86-065 (grounds for issuing a reprimand order); WAC 180-86-070 (grounds for issuing a suspension order); WAC 180-86-075 (grounds for issuing a revocation order).
[2] The current WAC 162-12-140(3)(b) permits inquiries into a prospective employee's arrests as follows: "Because statistical studies regarding arrests have shown a disparate impact on some racial and ethnic minorities, and an arrest by itself is not a reliable indication of criminal behavior, inquiries concerning arrests must include whether charges are still pending, have been dismissed, or led to conviction of a crime involving behavior that would adversely affect job performance, and the arrest occurred within the last ten years. Exempt from this rule are law enforcement agencies and state agencies, school districts, businesses and other organizations that have a direct responsibility for the supervision, care, or treatment of children, mentally ill persons, developmentally disabled persons, or other vulnerable adults."