# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MARIANNE MEEKER, an individual, Appellant, v. JAMES H. ORR and LEONA ORR, individually and the marital community composed thereof; LIBERTY MUTUAL INSURANCE COMPANY AND/OR LIBERTY INSURANCE COMPANY, foreign insurers and members of the Liberty Mutual group of companies; TRUMBULL INSURANCE COMPANY, a foreign insurer and a member of the Hartford Fire and Casualty Group of Companies, Respondents. | DIVISION ONE No. 81195-9-I UNPUBLISHED OPINION |

DWYER, J. — Marianne Meeker appeals from the orders of the superior court denying her motion for summary judgment and granting Trumbull Insurance Company's motion for summary judgment on her assigned breach of contract claim from insureds James and Leona Orr. On appeal, Meeker asserts that the trial court erred by dismissing her assigned claim because her amended complaint had set forth allegations of bodily injury and property damage against the Orrs that were conceivably covered by the Orrs' homeowner's insurance

policy with Trumbull Insurance, thereby triggering the insurance company's duty to defend the Orrs from her suit.[1]  Finding no error, we affirm.

I

Prior to the time in question, the Orrs were the owners and possessors of a retired racehorse.  In 2011, James Orr and Meeker reached an agreement—the terms of which the Orrs and Meeker later disputed—that resulted in Meeker taking possession of the horse.  Between 2011 and 2016, Meeker cared for the horse, which included boarding, feeding, training, and obtaining medical treatment for it.

Between May 2014 and May 2015, the Orrs had a homeowner's insurance policy through Trumbull Insurance.  As pertinent here, the personal liability coverage provision of that policy stated that Trumbull Insurance would provide coverage to the Orrs "[i]f a claim is made or a suit is brought" against them "for damages because of 'bodily injury' or 'property damage,'" coverage which included defending them against such a claim or suit.

The homeowners insurance policy defined "bodily injury" and "property damage" as follows:

> "Bodily injury" means bodily harm, sickness or disease, except a
> disease which is transmitted by an "insured" through sexual

---

[1] Meeker, in her reply brief, indicated that Liberty Mutual Insurance Company is "out of this appeal," having reached a settlement agreement after Meeker's appeal.  Reply Br. of Appellant at 1.  Additionally, the last page of Meeker's reply brief states that

> Meeker withdraws her appeal of the order granting summary judgment to the Orrs.  The appeal is moot because the Orrs have abandoned their claim to part of any recovery Meeker obtained from Liberty Mutual or Trumbull, or any other fees.  See Notation Ruling, Case No. 80823-1-1 (August 19, 2020).  Those claims were the reason for Meeker's claims against the Orrs.

Reply Br. of Appellant at 30.  Given that, we do not consider Meeker's claims against Liberty Mutual or against the Orrs on appeal.

contact. "Bodily injury" includes required care, loss of services and death resulting from covered bodily harm, sickness or disease.
. . . .
"Property damage" means physical injury to, destruction of, or loss of use of tangible property.[2]

In February 2016, James Orr took possession of the horse without Meeker's knowledge or permission and moved it to another location. Meeker demanded that he return the horse, stating that he had gifted it to her and that she was its rightful owner and possessor. He refused, stating that he had only agreed to lease the horse to her.[3]

In March 2016, Meeker filed a complaint against the Orrs in King County Superior Court identifying six causes of action: replevin, declaratory judgment, breach of implied in fact contract, promissory estoppel, equitable estoppel, and unjust enrichment. As pertinent here, Meeker alleged the following facts: "Plaintiff in fact assumed the burden of caring for the [horse]. Between 2011 and 2016, Plaintiff expended over $100,000 in expenses that included, without limitation, veterinary care, boarding, feed, and training of the [horse]."

Meeker's complaint further reads as follows:

### IV. FIRST CAUSE OF ACTION: REPLEVIN
. . . .
4.6     The approximate market value of the [horse] is between $10,500 and $15,000.
4.7     Defendants' wrongful and willful detention and conversion of Plaintiff's property has caused Plaintiff the following

---

[2] The bodily injury or property damage in question, according to the policy, must be "caused by an 'occurrence' to which this coverage applies." The term "[o]ccurrence" was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in: a. 'Bodily injury', or b. 'Property damage.'" Given our resolution of this matter, infra, we need not address whether the conduct in this matter constituted an "occurrence."

[3] Leona Orr, for her part, averred that her husband did not have the authority to give possession of the horse to Meeker at the outset.

damages: economic loss in an amount to be established at the time of trial; emotional distress; mental pain and suffering; and loss of consortium.

. . . .

### V. SECOND CAUSE OF ACTION: DECLARATORY JUDGMENT

. . . .

5.3  Plaintiff has suffered injury in fact as a result of Defendants' claimed legal ownership of the [horse].

. . . .

### VI. THIRD CAUSE OF ACTION: BREACH OF IMPLIED-IN-FACT CONTRACT

. . . .

6.5  Defendants' breach has proximately caused Plaintiff the following damages: economic loss in an amount to be established at the time of trial; emotional distress; mental pain and suffering; and loss of consortium.

### VII. FOURTH CAUSE OF ACTION: PROMISSORY ESTOPPEL

. . . .

7.4  Plaintiff did in fact change her position in response to Defendants' promise, assuming full responsibility for directing and paying for the cost of the care of the [horse], including extensive and expensive veterinary care.

. . . .

### [VIII]. FIFTH CAUSE OF ACTION: EQUITABLE ESTOPPEL

. . . .

8.5  Plaintiff made reasonable reliance on Defendants' admissions, statements, and actions, to her detriment.

8.6  Ongoing injury will be caused to Plaintiff if the Court permits Defendants to contradict or repudiate the admissions, statements, and actions upon which Plaintiff reasonably relied, to her detriment.

### [IX]. SIXTH CAUSE OF ACTION: UNJUST ENRICHMENT

. . . .

9.3  Defendants received a benefit from Plaintiff taking over the care of the [horse.]

9.4  The benefit that Defendants received from Plaintiff taking over the care of the [horse] was at the Plaintiff's expense.

. . . .

### [X]. PRAYER FOR JUDGMENT

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

. . . .

4

C.    For an award of special and general damages.
Plaintiff intends to seek damages in excess of $10,000.

The Orrs tendered Meeker's complaint to Trumbull Insurance, requesting that the insurance company defend them against Meeker's suit pursuant to their homeowner's insurance policy.  Trumbull Insurance denied their request, stating that Meeker's complaint did not allege "bodily injury" or "property damage."

In November 2016, Meeker amended her complaint to add a claim for negligent misrepresentation against James Orr.  Her amended complaint read, in pertinent part,

**X.    SEVENTH CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION (AS TO DEFENDANT JAMES H. ORR)**

. . . .

10.2    Defendant James H. Orr supplied information for the guidance of Plaintiff in her business transaction regarding [the horse] that was false.

10.3    Defendant James H. Orr knew or should have known that the false information was supplied to guide Plaintiff in her business transaction regarding [the horse].

10.4    Defendant James H. Orr was negligent in obtaining or communicating the false information.

10.5    Plaintiff relied on the false information supplied by Defendant James H. Orr.

10.6    Plaintiff's reliance on the false information supplied by Defendant James H. Orr was justified.

10.7    The false information was the proximate cause of damages to Plaintiff.

The Orrs tendered Meeker's amended complaint to Trumbull Insurance, again requesting that Trumbull Insurance defend them against Meeker's lawsuit. The insurance company also denied this request, stating that "our coverage position stands as [formerly] asserted."

In May 2017, as part of a conditional settlement agreement, the Orrs assigned Meeker their rights under their homeowner's insurance policy with Trumbull Insurance.

In November 2018, Meeker amended her complaint again, adding Trumbull Insurance as a defendant. Through the Orrs' assigned claims, Meeker alleged that Trumbull Insurance was liable for, as pertinent here, damages for breach of contract and acting in bad faith toward an insured.[4]

Thereafter, Meeker moved for partial summary judgment contending that Trumbull Insurance had a duty to defend the Orrs, that it breached that duty, and that its breach was in bad faith. Trumbull Insurance, for its part, moved for summary judgment on Meeker's claims arguing, as pertinent here, that it did not have a duty to defend the Orrs because her allegations against them were not covered by the policy in question, and that, if it breached that duty, it was not done in bad faith.

In August 2019, the trial court granted Trumbull Insurance's motion and denied Meeker's motion. The court determined that, as pertinent here, "there was no coverage under the Trumbull policy" and, therefore, "Trumbull did not breach the policy." Meeker later filed a motion for reconsideration, which the trial court denied.

Meeker now appeals.

---

[4] Meeker does not assign error on appeal to the trial court's dismissal of her claims under the Consumer Protection Act, chapter 19.86 RCW, and the Insurance Fair Conduct Act, RCW 48.30.010- .015.

II

Meeker asserts that the trial court erred by granting Trumbull Insurance's motion for summary judgment and by denying her motion for summary judgment. This is so, Meeker contends, because Trumbull Insurance had a duty to defend the Orrs in her lawsuit against them. Such a duty arose, according to Meeker, because her first amended complaint conceivably alleged that the Orrs' conduct, as defined in their homeowner's insurance policy through Trumbull Insurance, caused her "bodily injury" and "property damage" and was, therefore, covered by that policy. We disagree.

A

We "review a summary judgment ruling de novo and consider the same evidence heard by the trial court, viewing that evidence in a light most favorable to the party responding to the summary judgment [motion]." Slack v. Luke, 192 Wn. App. 909, 915, 370 P.3d 49 (2016) (citing Lybbert v. Grant County, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000)). "Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Quadrant Corp. v. Am. States Ins. Co., 154 Wn.2d 165, 171, 110 P.3d 733 (2005).

An insurer's duty to defend an insured "arises at the time an action is first brought" against the insured. Truck Ins. Exch. v. VanPort Homes, Inc., 147 Wn.2d 751, 760, 58 P.3d 276 (2002). An insurer's duty to defend is triggered if its insurance policy with the insured "*conceivably covers* the allegations in the complaint" brought against the insured. Woo v. Fireman's Fund Ins. Co., 161

7

Wn.2d 43, 53, 164 P.3d 454 (2007). Accordingly, in order to determine whether an insurer has a duty to defend, we begin by reviewing "the 'eight corners' of the insurance contract and the underlying complaint." Expedia, Inc. v. Steadfast Ins. Co., 180 Wn.2d 793, 803, 329 P.3d 59 (2014).[5]

In reviewing a complaint against an insured, this court has stated that

> [t]he insurer must defend if "on the face of the complaint and the insurance policy, there is an issue of fact or law that could conceivably result in coverage under the policy." Xia[ v. ProBuilders Specialty Ins. Co.], 188 Wn.2d [171, ]182[, 400 P.3d 1234 (2017)]. "[I]f there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend." Am. Best Food[, Inc. v. Alea London, Ltd.], 168 Wn.2d [398, ]405[, 229 P.3d 693 (2010)].
> When reviewing a complaint, we must give the insured the benefit of the doubt in determining the duty to defend, and a duty to defend will be found unless it is clear from the face of the complaint that the policy does not provide coverage. Woo, 161 Wn.2d at 64. If the complaint is ambiguous, it must be construed liberally in favor of triggering a duty to defend. Expedia, 180 Wn.2d at 803. In addition, any "legal ambiguity" must be resolved in favor of the insured. Am. Best Food, 168 Wn.2d at 411. The Supreme Court has expressly rejected the notion that an insurer can deny a duty to defend based on a questionable or equivocal interpretation of the law. Id. at 411-13; Woo, 161 Wn.2d at 60. An insurer cannot "[rely] on an equivocal interpretation of case law to give *itself* the benefit of the doubt rather than its insured." Woo, 161 Wn.2d at 60.
> An insurer's duty to defend applies to any allegation in a complaint that may result in a covered liability, even if other claims in the complaint are clearly outside the scope of coverage. See Grange Ins. Ass'n v. Roberts, 179 Wn. App. 739, 752, 320 P.3d 77 (2013) ("The obligation [to defend] encompasses any claim that might be covered under any permissible construction of the policy").

Webb v. USAA Cas. Ins. Co., 12 Wn. App. 2d 433, 445-46, 457 P.3d 1258 (2020) (alterations in original).

---

[5] We may, in certain circumstances, consider facts extrinsic to the complaint in determining whether an insurer has a duty to defend an insured. Expedia, 180 Wn.2d at 804. Given our disposition of this matter, we need not do so here.

In reviewing an insured's insurance policy with an insurer, "[i]nterpretation of an insurance contract is a matter of law." McDonald v. State Farm Fire & Cas. Co., 119 Wn.2d 724, 730, 837 P.2d 1000 (1992). In so doing,

> the entire contract must be construed together so as to give force and effect to each clause. If the language in an insurance contract is clear and unambiguous, the court must enforce it as written and may not modify the contract or create ambiguity where none exists. However, if a policy provision on its face is fairly susceptible to two different but reasonable interpretations, the policy is ambiguous and the court must attempt to discern and enforce the contract as the parties intended.

Transcontinental Ins. Co. v. Wash. Pub. Utils. Dists'. Util. Sys., 111 Wn.2d 452, 456-57, 760 P.2d 337 (1988) (citations omitted). "An interpretation which gives effect to all of the words in a contract provision is favored over one which renders some of the language meaningless or ineffective." Seattle-First Nat'l Bank v. Westlake Park Assocs., 42 Wn. App. 269, 274, 711 P.2d 361 (1985) (citing Wagner v. Wagner, 95 Wn.2d 94, 101, 621 P.2d 1279 (1980)).

"'If terms are defined in a policy, then the term should be interpreted in accordance with that policy definition. *If terms are not defined, then they are to be given their "plain, ordinary, and popular" meaning.'"* Polygon Nw. Co. v. Am. Nat'l Fire Ins. Co., 143 Wn. App. 753, 767, 189 P.3d 777 (2008) (emphasis added) (quoting Kitsap County v. Allstate Ins. Co., 136 Wn.2d 567, 576, 964 P.2d 1173 (1998)). Indeed, "[t]erms undefined by the insurance contract should be given their ordinary and common meaning, not their technical, legal meaning." Allstate Ins. Co. v. Peasley, 131 Wn.2d 420, 424, 932 P.2d 1244 (1997). Moreover, insurance policies should be "construed as a whole, and 'should be

9

given a fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'" Grange Ins. Co. v. Brosseau, 113 Wn.2d 91, 95, 776 P.2d 123 (1989) (quoting Sears v. Grange Ins. Ass'n, 111 Wn.2d 636, 638, 762 P.2d 1141 (1988)). An insurance "'policy cannot be stretched to the point where it would cover . . . problems'" not within the policy's protection. Nw. Farm Bureau Ins. Co. v. Roberts, 52 Wn. App. 888, 891, 765 P.2d 328 (1988) (quoting E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co., 106 Wn.2d 901, 908, 726 P.2d 439 (1986)).

B

Meeker contends that the damages that she alleged in her complaint were covered by the Orrs' homeowner's insurance policy with Trumbull Insurance. This is so, Meeker avers, because her complaint conceivably alleged causes of action for damages due to "bodily injury" and "property damage" as set forth in that insurance policy. These contentions are unavailing.

Again, the personal liability coverage provision of the Orrs' homeowner's insurance policy stated that Trumbull Insurance would provide coverage to the Orrs "[i]f a claim is made or a suit is brought" against them "for damages because of 'bodily injury' or 'property damage.'" As defined therein,

> "Bodily injury" means bodily harm, sickness or disease, except a disease which is transmitted by an "insured" through sexual contact. "Bodily injury" includes required care, loss of services and death resulting from covered bodily harm, sickness or disease.
> . . . .
> "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

Therefore, in order for Meeker to establish Trumbull Insurance's duty to defend, her complaint must conceivably allege that she experienced "bodily injury" or "property damage." As discussed below, her complaint fails to conceivably allege either type of injury.

1

Meeker first contends that her complaint conceivably alleges that the Orrs caused her a "bodily injury" as covered by Trumbull Insurance's policy with the Orrs. Meeker is incorrect.

The insurance policy does not define "bodily." Therefore, we must determine the plain, ordinary, and popular meaning of "bodily." Polygon Nw. Co., 143 Wn. App. at 767 ("If [insurance policy] terms are not defined, then they are to be given their 'plain, ordinary, and popular' meaning." (internal quotation marks omitted) (quoting Kitsap County, 136 Wn.2d at 576)). To do so, we resort to Webster's Dictionary, which defines "bodily" as

> **1 :** having a body or a material form : PHYSICAL, CORPOREAL . . . **2 a :** of or relating to the body . . . **b :** concerning the body . . .
>     SYN PHYSICAL, CORPOREAL, CORPORAL, SOMATIC: these words agree in referring to the human body and differ so little that they are often interchangeable. BODILY contrasts with *mental* or *spiritual*.

WEBSTER'S THIRD NEW INT'L DICTIONARY 245 (2002). Accordingly, the plain, ordinary, and popular meaning of "bodily" can be characterized as that which has to do with the physical and corporeal aspect of a body and stands in contrast with that which is mental or spiritual.

This understanding of "bodily" as limited to the physical or corporeal is consistent with Washington state appellate decisional authority interpreting the

11

meaning of that word as it appears in an insurance policy.  See, e.g., Daley v. Allstate Ins. Co., 135 Wn.2d 777, 784-85, 958 P.2d 990 (1998) ("'Bodily injury' is defined in the Allstate [underinsured motorist] policy as 'bodily injury, sickness, disease or death.' . . . The clear majority of states, including Washington, have held that the term 'bodily injury' does not include damages for purely emotional injuries" (footnote omitted)); E-Z Loader, 106 Wn.2d at 908 (coverage for "bodily injury" "contemplated actual bodily injury, sickness or disease resulting in physical impairment, as contrasted to mental impairment"); Roberts, 52 Wn. App. at 891 (policy defining bodily injury as "physical harm, sickness or disease to a person" does not provide coverage for defending a claim of negligent infliction of emotional distress).

As set forth above, Meeker's first amended complaint alleged that she "assumed the burden of caring for the [horse]" and "[b]etween 2011 and 2016, [she] expended over $100,000 in expenses that included, without limitation, veterinary care, boarding, feed, and training of the [horse]."  Meeker also alleged that the Orrs unlawfully took possession of the horse in question.

In the context of those facts, Meeker alleged the following damages: "economic loss in an amount to be established at the time of trial; emotional distress; mental pain and suffering; and loss of consortium," "injury in fact," damages arising from "directing and paying for the cost of the care of the [horse], including extensive and expensive veterinary care," "ongoing injury" by reasonably relying on certain of the Orrs' conduct to her detriment, the Orrs obtaining a "benefit" at her "expense," damages resulting from the Orrs giving her

false information in a business transaction and her justifiable reliance on such information, and "special and general damages."

The foregoing allegations of damages—emotional distress, mental pain and suffering, loss of consortium, paying for the cost of the horse's care—do not reasonably constitute "bodily injury" covered by that insurance policy. Rather, these specific damages constitute allegations of emotional, mental, or financial injury. As set forth above, the plain, ordinary, and popular meaning of bodily injury does not reasonably encompass those types of injuries. WEBSTER'S, supra, at 245; Daley, 135 Wn.2d at 784-85; E-Z Loader, 106 Wn.2d at 908; Roberts, 52 Wn. App. at 891. Moreover, an average person purchasing insurance would not give "bodily" a meaning as far-ranging as the meaning desired by Meeker. As noted above, an insurance policy "cannot be stretched to the point where it would cover" problems not within the policy's protection. Roberts, 52 Wn. App. at 891 (quoting E-Z Loader, 106 Wn.2d at 908). Thus, Meeker's specific allegations of damages in her amended complaint do not conceivably allege a bodily injury covered by the policy at issue.

Additionally, Meeker alleged general damages, including injury in fact, ongoing injury, and expense. Lacking specificity as to the injury in question, these are examples of general damages, which are

> [d]amages that the law presumes follow from the type of wrong complained of; specif., compensatory damages for harm that so frequently results from the tort for which a party has sued that the harm is reasonably expected and need not be alleged or proved. • General damages do not need to be specifically claimed.

BLACK'S LAW DICTIONARY 489 (12th ed. 2024).

As set forth above, Meeker's complaint alleged the following causes of action: replevin, declaratory judgment, breach of implied-in-fact contract, promissory estoppel, equitable estoppel, unjust enrichment, and negligent misrepresentation.

The causes of action set forth in Meeker's complaint do not conceivably allege a "bodily injury" covered by the insurance policy at issue. As an initial matter, the legal theories identified in her complaint do not logically imply bodily injury and the damages that follow from such causes of action are not presumed to be damages for bodily injury. To the contrary, her causes of action sound in equity, loss of possession, and contract. Furthermore, her negligent misrepresentation allegation, although sounding in tort, is specifically predicated on damages arising from a "business transaction" with the Orrs, rather than on physical injury arising therefrom.[6]

Thus, Meeker's allegations of general damages do not conceivably allege a bodily injury covered by the insurance policy at issue. Accordingly, Meeker's complaint fails to properly allege a "bodily injury" covered by the insurance policy at issue.[7]

---

[6] Even if Meeker had only generally alleged that she was damaged as part of her negligent misrepresentation cause of action, that general allegation would also fail to conceivably allege a "bodily injury." Indeed, this court has expressly declined to adopt a theory of negligent misrepresentation causing physical harm as an existing basis for a cause of action of negligent misrepresentation. Richland Sch. Dist. v. Mabton School Dist., 111 Wn. App. 377, 389, 45 P.3d 580 (2002) (declining to adopt section 311 of the Restatement (Second) of Torts—which "imposes liability on anyone who gives false information to another who reasonably relies on that information, and physical harm results" because "Washington has never adopted *Restatement (Second) of Torts* section 311 and no published case has discussed its applicability to Washington common law"). Meeker does not present argument or authority in support of adopting such a theory or in an attempt to establish legal ambiguity surrounding that theory.

[7] Meeker also asserts that, even if she did not conceivably allege "bodily injury" in her complaint, Trumbull still had a duty to defend the Orrs. This is so, Meeker contends, because the

2

Meeker next contends that her complaint conceivably alleges that the Orrs caused her "property damage" as covered by Trumbull Insurance's policy with the Orrs. Meeker is, again, incorrect.

To reiterate, the Orrs' insurance policy with Trumbull Insurance defined "Property damage" as "physical injury to, destruction of, or loss of use of tangible property." Meeker does not contend that the Orrs' taking possession of the horse caused physical injury to the horse nor that the Orrs destroyed the horse. Rather, Meeker avers that her complaint and amended complaint alleged that the Orrs' taking possession of and using the horse constituted a "loss of use of tangible property" covered by the policy in question.

The policy does not define "loss," "use," or "property." Accordingly, we give those terms their plain, ordinary, and popular meaning. Polygon Nw., 143 Wn. App. at 767 (quoting Kitsap County., 136 Wn.2d at 576). And, again, "[a]n interpretation which gives effect to all of the words in a contract provision is favored over one which renders some of the language meaningless or ineffective." Seattle-First Nat'l Bank, 42 Wn. App. at 274 (citing Wagner, 95 Wn.2d at 101).

---

insurance policy's personal liability coverage provision, set forth above, obligated Trumbull to defend the Orrs against lawsuits "even if the suit is groundless, false or fraudulent."

Meeker misreads the personal liability coverage provision. The predicate for Trumbull Insurance's obligation to defend the Orrs from a groundless, false, or fraudulent lawsuit is a complaint being filed against the Orrs that conceivably alleges a "bodily injury" or "property damage" arising from an "occurrence." As discussed herein, Meeker did not file a complaint that conceivably alleged such injury or damage. Thus, this assertion also fails.

With regard to "loss," our Supreme Court has indicated that loss "has many definitions, but is most pertinently defined as 'the act or fact of losing[;] failure to keep possession[;] deprivation,' and 'the harm or privation resulting from losing or being separated from something.'" Seattle Tunnel Partners v. Great Lakes Reinsurance (UK) PLC, 200 Wn.2d 315, 338, 516 P.3d 796 (2022) (alterations in original) (quoting WEBSTER'S, supra, at 1338).

"Use" is defined as "to put into action or service: have recourse to or enjoyment of : EMPLOY," and "to expend or consume by putting to use." WEBSTER'S, supra at 2523-24. We have defined the word "use" to also mean, "among other things, 'the act . . . of using something; . . . the privilege or benefit of using something.'" Prudential Prop. & Cas. Ins. Co. v. Lawrence, 45 Wn. App. 111, 118, 724 P.2d 418 (1986) (alterations in original) (quoting WEBSTER'S THIRD NEW INT'L DICTIONARY (1969)).

"Property" is defined, in pertinent part, as

**2 a :** something that is or may be owned or possessed . . . **b :** the exclusive right to possess, enjoy, and dispose of a thing **:** a valuable right or interest primarily a source or element of wealth . . . **c :** something to which a person has a legal title.

WEBSTER'S, supra, at 1818. Therefore, as pertinent here, the plain, ordinary, and popular meaning of "loss of use of property" involves deprivation of the ability to put something that someone owned or possessed into action or service or deprivation of the ability to consume something once owned or possessed.

Given this definition, Meeker's amended complaint must allege that the Orrs taking possession of the horse deprived her of the ability to put the horse

16

into some action or service or that she was deprived of the ability to employ or consume some resources that she had purchased for the horse.

As set forth above, Meeker's first amended complaint alleged the following facts: she agreed to "assum[e] the burden of caring for the [horse]," she "expended over $100,000 in expenses that included, without limitation, veterinary care, boarding, feed, and training of the [horse]." She also alleged that, "[i]n late February 2016, [James Orr] took the [horse] and hauled the horse to an undisclosed location, without [her] permission," "[t]he approximate market value of the [horse] is between $10,500 and $15,000," and she incurred damages of "economic loss in an amount to be established at the time of trial; emotional distress; mental pain and suffering; and loss of consortium."

Meeker's amended complaint does not conceivably allege a loss of use of property covered by the policy at issue. First, her amended complaint did not set forth a specific use of the horse that she had lost due to the Orrs' alleged conduct. Rather, she merely alleged injuries that are associated with loss of possession of the horse.

Moreover, in order to give meaning to the policy's language setting forth "loss of use of property," it follows that the word "loss" in that section does not modify the word "property" but, rather, modifies "use of property." Indeed, without invoking legal definitions, an average person looking for insurance coverage would reasonably interpret "loss of use of property" to mean something different than "loss of property," with the former signifying an inability to put one's

property to a desired action or service, and the latter signifying a deprivation of the property itself.

Furthermore, although she alleged a claim of conversion, which necessarily results in a loss of possession, she does not allege a loss of use arising from that loss of possession. Moreover, her remaining causes of action, discussed herein, are predicated in equity, tort, and contract. The damages that follow from those causes of action are not presumed to be damages for loss of use of property.

Finally, although Meeker's amended complaint alleged that she had spent considerable sums in purchasing resources for the horse in the past, this does not allege a loss of use of property conceivably covered by the policy. Indeed, she has not established that she was deprived of an opportunity to employ those resources toward another use or that she had purchased resources that she was unable to then employ due to the Orrs' actions in this matter. Given that, Meeker does not establish that her amended complaint alleged a loss of use of property conceivably covered by the policy at issue.[8]

Therefore, Meeker's complaint did not set forth allegations that were conceivably covered by Trumbull Insurance's policy with the Orrs. Thus,

---

[8] Nevertheless, Meeker relies on our decision in Seattle Tunnel Partners v. Great Lakes Reinsurance (UK) PLC, 18 Wn. App. 2d 600, 492 P.3d 843 (2021), aff'd, 200 Wn.2d 315, 516 P.3d 796 (2022), for the proposition that physical loss and loss of use are synonymous.
Meeker's reliance is unavailing. Neither we—nor the high court in the resulting appeal—held that "loss of use" and "physical loss" are coterminous. Rather, the matter therein regarded whether "physical loss *encompassed* "loss of use." Both we and the high court held that, unless a loss of use arose out of—or was a result of—a physical loss, a physical loss did not encompass a loss of use. Seattle Tunnel Partners, 200 Wn.2d at 343-44; Seattle Tunnel Partners, 18 Wn. App. 2d at 621. Because our decisional authority has not held that "loss of use" and "physical loss" are coterminous, and because Meeker's complaint does not conceivably allege a loss of use arising out of—or as a result of—physical injury to the horse in question, Meeker's claim fails.

Trumbull Insurance did not have a duty to defend the Orrs from Meeker's suit.[9]

Accordingly, the trial court did not err in its orders in response to the parties'

summary judgment motions.[10]

Affirmed.

_____
Dwyer, J.

WE CONCUR:

_____   _____
Coburn, J.                          Hazelrigg, ACJ

---

[9] Because Trumbull Insurance did not have a duty to defend, we need not address Meeker's assertion that the insurance company's decision not to defend the Orrs against her lawsuit was made in bad faith.

[10] Meeker also assigns error to the trial court's denial of her motion for reconsideration. However, her appellate briefing does not provide us with persuasive argument, citation to legal authority, citation to the record, or identification of an issue associated with that assignment of error. RAP 10.3(a)(5), (6). She thus did not adequately present this alleged error for appellate review. Accordingly, we decline to consider it.